UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH GRAUS,

                                  CASE NO. 06-CV-14102-DT
            Plaintiff,         JUDGE PAUL D. BORMAN
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CORRECTIONAL
MEDICAL SERVICES,

           Defendant,
                                 /

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S OCTOBER 26, 2006 DISPOSITIVE MOTION (Doc. Ent. 7) and
DEFENDANT'S MAY 15, 2007 DISPOSITIVE MOTION (Doc. Ent. 10)**

**I.**     **RECOMMENDATION:** The Court should grant in part and deny in part defendant's May 15, 2007 dispositive motion (Doc. Ent. 10). Specifically, the Court should dismiss plaintiff's complaint without prejudice. If the Court agrees with this recommendation, it need not rule on the merits of defendant's October 26, 2006 dispositive motion (Doc. Ent. 7) and should enter an order deeming it moot.

**II.**     **REPORT:**

**A.**     **Background**

During the time relevant to this case, plaintiff was an inmate at Cotton Correctional Facility (JCF) under the custody of the Michigan Department of Corrections (MDOC). Doc. Ent. 10 at 9. As early as September 26, 2004, he was diagnosed with ulcerative colitis. During his second trip to Foote Hospital, Dr. Case performed surgery and removed the infected section of plaintiff's intestines. Doc. Ent. 2 at 5.

On December 20, 2004, plaintiff completed a Step I grievance form. Doc. Ent. 2 at 20

(SMT-05-02–00228-12D1). Although it is difficult to read, it appears to state as follows:

> I was in the hospital from Oct. 2, 200[4] to Dec. 6, 2004 [due to] my ulcerative colitis.[1] Because of this I had some of my large intestine remove[d]. [A]fter the surgery I had to [wear] a colostomy bag. When the surgeon (Dr. Case) did the surgery he told me that this would be temporary, to wear the colostomy bag for [some] month[s] then he (Dr. Case) would reconnect[] the large intestine to my rectum. Now that the six month[s] are almost up the [CMS] . . . they will not approve the surgery that [is] not fair to me to live with this colostomy bag . . . when the [doctor] said he would rever[se] it. Now it [is] about the money. My health is wor[th] more th[a]n the Correctional Medical Services trying to save some money!

Doc. Ent. 2 at 20. On February 14, 2005, Debbie L. Roth interviewed plaintiff. Doc. Ent. 2 at 21-22. On February 18, 2005, Roth responded to the grievance, stating in part: "Mr. Graus wants a colostomy closure that is not medically necessary, therefore it was disapproved." Robyn Finch reviewed the response. Doc. Ent. 2 at 21.

On February 26, 2005, plaintiff completed a Step II grievance appeal, stating:

> I was told by Debbie Roth that my colostomy closure is not medically necessary, that the Correctional Medical Services think it's not an emergency so my surgery was denied. That [is] not fair to me when my surge[on] (Dr. Case) told me that he [would] do the closure of the colostomy when it was time. Now that it [is] time to rever[se] it (the colostomy) they think it [is] not worth spen[d]ing the money. My health to me is worth more th[a]n money[.]

Doc. Ent. 2 at 22. On March 18, 2005, respondent Alfred Jones denied plaintiff's Step II grievance appeal. The Step II grievance appeal response states that "[i]t was determined by

---

[1]Ulcerative colitis is "[a]n inflammation of the colon (the large bowel) characterized by ulceration of its lining membrane. . . . The clinical symptoms are abdominal pain, diarrhea, and bleeding through the rectum." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 5, U-4 (1995).

2

medical staff that the requested colostomy was not medically indicated[,]" and "[a]ppropriate medical treatment was provided for grievant's health care issue." Doc. Ent. 2 at 23.

Plaintiff filed a Step III grievance appeal in which he stated that "not having my colostomy close[d] is not safe or good living condition[s] when health care was at faul[t], that [is] why I had to have the surgery in the first place because they didn't do anything when the [problem] first star[t]ed in July 2004 I need the surgery to get my life back on track." Doc. Ent. 2 at 22. Plaintiff's Step III grievance appeal, prepared by N. Martin and approved by Jim Armstrong, was denied on March 31, 2005. The response states that "the denial for additional surgery does not equate to denial of care. A medical judgment has been made that the additional surgery is not medically indicated at this time." Doc. Ent. 2 at 24.

**B.** *Graus v. White*, **Case No. 05-CV-74199-DT**

On November 2, 2005, while residing at Parnall Correctional Facility (SMT), plaintiff Keith Graus filed a pro se prisoner civil rights complaint against defendant Harold White, SMT Warden. *Graus v. White*, Case No. 05-CV-74199-DT (Doc. Ent. 1 at 1, 13). It also appears that plaintiff intended to name as defendants Correctional Medical Services (CMS), described as the MDOC healthcare provider, and Dr. Mathia, described as an MDOC doctor. Doc. Ent. 1 at 13. This case was assigned to Judge Paul D. Borman and Magistrate Judge Wallace Capel. Attached to plaintiff's complaint are (1) an affidavit, Doc. Ent. 1 at 13-22; (2) the grievances and responses in grievance identifier SMT-05-02-00228-12D1, Doc. Ent. 1 at 23-27; and (3) what appear to be pictures taken in 2004 at Foote Hospital, Doc. Ent. 1 at 28.

On January 31, 2006, defendant White filed a Rule 12(b)(6) motion to dismiss for failure to establish exhaustion of administrative remedies. (Doc. Ent. 9). Specifically, defendant White

argued that "[t]he 'total exhaustion' rule announced in *Jones-Bey v[.] Johnson*, is binding precedent that this Court must apply in the instant case." Doc. Ent. 9 at 8-10. On August 28, 2006, Judge Borman entered an order granting defendant's motion to dismiss and dismissing plaintiff's complaint without prejudice for failure to exhaust administrative remedies. Doc. Ent. 15.

On August 28, 2006, plaintiff filed a motion to voluntarily dismiss defendants White and Mathia, a motion to amend to clarify complaint, and a motion to reissue summons. Doc. Ent. 16. On August 30, 2006, Judge Borman entered an order denying the motion as moot. Doc. Ent. 17.

**C.     The Instant Case**

On September 19, 2006, while residing at JCF, plaintiff filed a pro se[2] prisoner civil rights complaint against CMS. This complaint specifically mentions *Graus v. White* (Case No. 05-CV-74199-DT) as a previous lawsuit dismissed without prejudice for failure to exhaust administrative remedies. Doc. Ent. 2 at 2. According to plaintiff, Roth informed him that his "parole eligibility date was approaching and it was cheaper to pay for [his] supplies and let [him] pay for [his] own surgery after [he] was paroled than it was to pay for [his] surgery." Doc. Ent. 2 at 4. Plaintiff claims that "CMS maintains an official custom of refusing to take some medical actions for prisoners close to their parole eligibility date in order to defer medical costs to the prisoner once he is paroled[,]" which subjects some prisoners to deliberate indifference to their serious medical needs. Plaintiff claims this practice contravenes MDOC PD 03.04.100 and

---

[2]Along with his complaint, plaintiff filed an application to proceed without payment of fees. On September 28, 2006, Magistrate Judge Whalen granted this application, directed service without prepayment of cost and authorized the U. S. Marshal to collect costs after service is made. Doc. Entries 1, 3 & 4.

4

almost resulted in his death from ulcerative colitis. Doc. Ent. 2 at 5. He claims to need this surgery to restore his bodily functions. Doc. Ent. 2 at 6.

Plaintiff seeks entry of an order requiring "CMS to pay for all colostomy bag supplies and the surgery [plaintiff] will need to restore the normal functions of [his] bowels[,]" and "CMS to pay [him] compensatory and punitive damages for the cruel and unusual punishment [he] suffered due to [defendant's] official custom . . . and any other relief this Court deems appropriate." Doc. Ent. 2 at 4. Attached to plaintiff's complaint are copies of (A) MDOC PD 03.04.100 (Health Services), effective November 1, 2002; (B) the grievances and responses in grievance identifier SMT-05-02-00228-12D1 and (C) what appear to be pictures taken in 2004 at Foote Hospital. Doc. Ent. 2 at 8-18, 20-24, 26.

This case was originally assigned to Judge Cohn and myself. On October 3, 2006, Judge Cohn referred this case to me to conduct all pretrial proceedings. Doc. Ent. 5.

**D.     Defendant's First Motion to Dismiss**

Currently pending before the Court is defendant CMS's October 26, 2006, motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e. Doc. Ent. 7.[3] Defendant argues that "[e]ven if plaintiff's complaint is true, defendant is entitled to dismissal under 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies[,]" and "[p]laintiff fails to state a claim as to defendant CMS[.]" Doc. Ent. 7 at 13-20, 20-24. Attached to defendant's motion are copies of (A) MDOC PD 03.02.130 (Prisoner/Parolee Grievances) effective 04/28/03 and (B)

---

[3]On March 1, 2007, CMS's waiver of service (sent to 12647 Olive Blvd in St. Louis, MO) was returned unexecuted. (Doc. Ent. 8). However, the Court interprets defendant's October 26, 2006 motion, filed by counsel for CMS, to constitute an appearance in this matter.

5

*D'Andrea v. Rodriguez*, Case No. 5:06-cv-99, 2006 WL 1997385 (W. D. Mich. July 14, 2006).[4]

Doc. Ent. 7-3, Doc. Ent. 7-4.[5]

On January 22, 2007, the Supreme Court issued its decision in *Jones v. Bock*, 127 S. Ct. 910 (2007), concluding in part that the PLRA does not require total exhaustion. *Jones*, 127 S. Ct. at 914. On May 2, 2007, an order was entered reassigning the instant case from Judge Cohn to Judge Borman as a companion case to Case No. 05-74199. Doc. Ent. 9. On May 24, 2007, Judge Borman referred this case to me, the magistrate judge assigned to the case, to conduct all pretrial proceedings. Doc. Ent. 11.

**E.      Defendant's Second Motion to Dismiss**

Also pending before the Court is defendant CMS's May 15, 2007, motion to dismiss pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute. Doc. Ent. 10. Defendant requests that the Court dismiss this matter with prejudice. Doc. Ent. 10 at 3, 13. Defendant argues that "this matter should be dismissed under [Fed. R. Civ. P. 41(b)] for lack of progress for failure of plaintiff to respon[d] to defendant's motion within the time specified by the Court." Doc. Ent. 10 at 7.

---

[4]"Plaintiff may attempt to grieve his unexhausted his claims; however, if they are rejected by the MDOC as untimely, the exhaustion requirement will not be met, and his suit will be barred. *See Woodford v. Ngo*, 126 S. Ct. 2378 (2006) (holding that "proper exhaustion," that is, exhaustion that complies with "critical procedural rules" such as time limits for filing grievances, is a precondition to any suit challenging prison conditions; failure to properly exhaust bars suit in federal court). Alternatively, in the event Plaintiff has fully exhausted some or all of his claims against the proper Defendants, he may file a new action, demonstrating that he has properly exhausted." *D'Andrea v. Rodriguez*, Case No. 5:06-cv-99, 2006 WL 1997385, 3 (W. D. Mich. July 14, 2006).

[5]On October 23, 2006, plaintiff filed a notice of change off address with this Court. Doc. Ent. 6. On October 31, 2006, shortly after defendant filed its first dispositive motion, plaintiff was paroled. *See* www.michigan/gov/corrections, "Offender Search".

Attached to defendant's motion is an unsigned stipulation and order granting plaintiff an enlargement of time and a March 1, 2007 correspondence from defense counsel to plaintiff. Doc. Entries 10-3 and 10-4.

**F.      Applicable Law**

"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted." *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link*, 370 U.S. at 629-630.

Fed. R. Civ. P. 41 governs dismissals. As to involuntary dismissal, it provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed. R. Civ. P. 41(b). "Neither the permissive language of [Rule 41(b)]-which merely authorizes a motion by the defendant-nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link*, 370 U.S. at 630.

"The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630-631. "It would require a much clearer expression of

purpose than Rule 41(b) provides for us to assume that it was intended to abrogate so well-acknowledged a proposition." *Link*, 370 U.S. at 631-632. *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980) ("The Court denied that [Fed. R. Civ. P.] 41(b) limits a court's power to dismiss for failure to prosecute to instances where a defendant moves for dismissal.") (citing *Link*, 370 U.S. at 630); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.") (citing *Link*, 370 U.S. at 630-632; *Roadway Express*, 447 U.S. at 767); *Carlisle v. United States*, 517 U.S. 416, 426, 449-450 (1996) ("something far more than an ambiguous silence is required to withdraw a district court's inherent power.").

"[T]he absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing [does not] necessarily render such a dismissal void." *Link*, 370 U.S. at 632. "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Id*. Therefore, "when circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting." *Id*. at 633.

**G.     Analysis**

Defendant contends that "[t]he case should be dismissed, with prejudice, for Plaintiff's willful failure to pursue his case. Plaintiff's failure to file any responsive pleading is grounds to dismiss the case under Fed. R. Civ. P. 41(b)." Specifically, defendant argues that it is entitled

8

"to dismissal for failure to prosecute under [Fed. R. Civ. P.] 41(b)[,]" and requests that the action be dismissed with prejudice. Doc. Ent. 10 at 13.

**1.**     To begin, plaintiff has not responded in a timely manner to defendant's October 26, 2006 and May 15, 2007 dispositive motions. "A response to a dispositive motion must be filed within 21 days after service of the motion." E. D. Mich. LR 7.1(d)(1)(B). Therefore, absent an order stating otherwise, a response to defendant's October 26, 2006 dispositive motion would have been due on or before November 16, 2007. Plaintiff has yet to file a response to defendant's October 26, 2006 dispositive motion.

Likewise, a response to defendant's May 15, 2007 dispositive motion would have been due on or before June 5, 2007. No such response has been received.

**2.**     Although it appears that plaintiff sought an extension of time to respond to the October 26, 2006 motion to dismiss, it does not appear that he took advantage of defense counsel's willingness to do so. According to defendant, "[p]laintiff contacted defense counsel, and had experienced a delay in receiving the Motion to Dismiss due to his release from the [MDOC]. Counsel offered an extension of time to answer the Motion[.]" Doc. Ent. 10 at 2 ¶ 3. The extension was set forth in a proposed "stipulation and order granting plaintiff an enlargement of time", allegedly faxed to plaintiff. Doc. Ent. 10-3 at 2-3, Doc. Ent. 10-4 at 2. The stipulation, if executed, would have given plaintiff "a twenty-one (21) day extension from November 14, 2006 to submit a response to Defendant's [October 26, 2006] Motion to Dismiss due to Plaintiff not receiving the Motion to Dismiss in a timely manner because he was paroled and the documents returned from the Department of Corrections to Defendant." Doc. Ent. 10-3 at 2-3.

Defense counsel tried twice to contact plaintiff about the stipulation. Plaintiff attempted to contact defense counsel on Friday, February 23, 2006, and they spoke on Monday, February 26, 2007. At that time, plaintiff stated he had not received the facsimile of the stipulation and had not been able to secure the representation of counsel. Doc. Ent. 10 at 2 ¶ 4. Defense counsel indicated she would be filing a motion regarding plaintiff's failure to respond and prosecute, based upon plaintiff's failure to respond to the October 26, 2006 motion to dismiss. Doc. Ent. 10-4 at 2. By a letter dated March 1, 2007, defense counsel provided plaintiff with another copy of the stipulation and reiterated that she would "be filing a motion regarding [plaintiff's] lack of response and lack of prosecution of the case, as [plaintiff had] yet to answer the [October 26, 2006] Motion to Dismiss." Doc. Ent. 10-4 at 2.

Furthermore, plaintiff has not filed a request for an extension of time to respond in this case. Such a request might have been filed pursuant to Fed. R. Civ. P. 6(b).

**3.** It appears that plaintiff's address change was effective and that he is currently receiving documents at his last known address. Although plaintiff filed his address change on October 23, 2006, it was to be effective on October 31, 2006. Doc. Ent. 6. Plaintiff's copy of defendant's October 26, 2006 dispositive motion was sent to plaintiff at JCF. Doc. Ent. 7 at 1, 25. As described above, it appears that plaintiff eventually received defendant's October 23, 2006 motion.

Even if plaintiff did not receive the stipulation by facsimile, as described above, the March 1, 2007 letter from defense counsel (which included a copy of the stipulation) was mailed to plaintiff's address in Detroit. Doc. Ent. 10-4 at 2. As of May 15, 2007, the date of the instant motion, plaintiff had not returned the stipulation to defense counsel. Doc. Ent. 10 at 2 ¶ 6. Also,

10

the proof of service attached to defendant's May 15, 2007 dispositive motion indicates that plaintiff's copy of that dispositive motion was mailed to plaintiff's address on Somerset in Detroit, Michigan. Doc. Ent. 10 at 1, 14. Furthermore, there is no indication on the docket that any of the post-address change orders of this Court (the May 2, 2007 order reassigning case and the May 24, 2007 order referring pretrial matters) have been returned as undeliverable.

Plaintiff's October 23, 2006 notice of change of address lists plaintiff's new address as 5601 Somerset, Detroit, Michigan 48224. This is the address listed on the docket for this case. Although this address is not linked with plaintiff's name at www.whitepages.com, the Court has no choice other than to assume that plaintiff's last known address is on Somerset, especially because there is no way to confirm a more recent address as plaintiff has not filed a document since the change of address.

**4.** It appears that plaintiff has abandoned this case. Plaintiff has only filed three documents in this case: (1 & 2) his September 19, 2006 in forma pauperis application and complaint, Doc. Entries 1 & 2, and (3) his October 23, 2006 notice of change of address, Doc. Ent. 6. Therefore, it has been more than nine months since plaintiff has filed any paper in this case.

**5.** With the foregoing in mind, the Court should consider defendant's request that this case be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b). Doc. Ent. 10 at 2-3. "[D]istrict courts possess broad discretion to sanction parties for failing to comply with procedural requirements." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 991 (6th Cir. 1999) (citing *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991). "[T]he *Carver* court concluded that a district court can dismiss an action for noncompliance with a local

rule only if the behavior of the noncomplying party rises to the level of a failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure." *Tetro*, 173 F.3d at 992.

The Sixth Circuit considers "four factors in reviewing the decision of a district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.1999)). *See also Mulbah v. Detroit Board of Education*, 261 F.3d 586, 589 (6th Cir. 2001) and *Knoll*, 176 F.3d at 363.

Although it is not clear whether plaintiff's failure to prosecute is due to willfulness, bad faith or fault, defendant cannot be expected to defend an action which plaintiff has apparently abandoned. Furthermore, while it does not appear the Court warned plaintiff that a failure to cooperate could result in dismissal of this action,[6] that was certainly the gist of defense counsel's February 26, 2006 and March 1, 2006 warnings to plaintiff that a motion to dismiss for lack of response and prosecution would be filed.

Considering (1) plaintiff's failure to respond to the two pending dispositive motions under the circumstances described above, (2) plaintiff's apparent abandonment of this case, (3) the fact that the merits of defendant's October 26, 2006 motion - based in part on exhaustion and

---

[6]The only orders entered by the Court thus far have been (1) the September 28, 2006 orders on application to proceed without prepayment of fees and directing service without prepayment (Doc. Entries 3 and 4); (2) the October 3, 2006 order of reference (Doc. Ent. 5); (3) the May 2, 2007 order of reassignment (Doc. Ent. 9) and (4) the May 24, 2007 order of reference (Doc. Ent. 11).

12

which may have been affected by the Supreme Court's January 22, 2007 decision in *Jones* - have not been addressed,[7] and (4) the factor of imposing a less drastic sanction before granting defendant's request for dismissal with prejudice, the Court should dismiss plaintiff's complaint *without* prejudice for failure to prosecute. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("dismissal is appropriate when a *pro se* litigant has engaged in a clear pattern of delay.") (citing *Holt v. Pitts*, 619 F.2d 558, 562 (6th Cir.1980));[8] *Mooney v. Cleveland Clinic Foundation*, 184 F.R.D. 588, 590 (N. D. Ohio 1999) ("*Pro se* litigants are required to follow the rules of civil procedure and easily-understood Court deadlines. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). The Court may dismiss a case in which a *pro se* litigant has engaged in a clear pattern of delay. *Id.*"); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("the lenient treatment generally accorded to pro se litigants has limits.") (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991)).[9]

---

[7]Defendant's October 26, 2006 motion to dismiss was based, in part, upon an alleged failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). Doc. Ent. 7 at 1. Defendant's argument in this regard relied in part upon the Sixth Circuit's published decisions in *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000); *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998); *Burton v. Jones*, 321 F.3d 569 (6th Cir. 2003) and *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). Doc. Ent. 7 at 2-3, 13-20. However, the Supreme Court's January 22, 2007 decision in *Jones v. Bock*, 127 S. Ct. 910 (2007) significantly clarified the requirements of Section 1997e(a).

[8]"Here, the district court concluded that appellant's failure to pursue his case despite two extensions of time was unwarranted and merited dismissal. Since Jourdan was aware of his obligation to proceed, and no special circumstances point to an abuse of discretion by the district court, we conclude that the order of the district court must be *affirmed*." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

[9]"The magistrate judge, however, not only gave plaintiffs a chance to respond to the motion but actually *ordered* them to do so." *Pilgrim*, 92 F.3d at 416. "Because plaintiffs cannot claim that their case was dismissed before they became aware of the potential deficiencies in their complaint, and were given the opportunity to remedy any deficiencies, they cannot now seek shelter in their pro se status." *Id*.

I note the Second Circuit's caution that "district courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a pro se litigant." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993)). *See also Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998) (citing *Lucas*, 84 F.3d at 535). However, I agree with defendant that plaintiff "appears to have abandoned this case." Doc. Ent. 10 at 10. *Washington v. Walker*, 734 F.2d 1237, 1240 (7th Cir. 1984) (affirming district court's Rule 41(b) dismissal for failure to prosecute where "[p]laintiffs virtually abandoned this case, doing nothing to move it forward for more than five years.").

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers*, AFL-CIO, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 8/3/07

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 3, 2007.
>
> s/Eddrey Butts
> Case Manager